UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CAROLYN WELLS,

        Plaintiff,

    v.                                  ACTION NO. 2:05cv573

BAE SYSTEMS NORFOLK SHIP REPAIR,
formerly known as Norfolk Shipbuilding
and Drydock Corporation,

        Defendant.

## OPINION AND FINAL ORDER

Plaintiff Carolyn Wells ("Wells") filed this civil rights action against Defendant BAE Systems Norfolk Ship Repair ("BAE"), her former employer. The matter is before the court on BAE's motion for summary judgment. For the reasons set forth herein, BAE's motion for summary judgment is **GRANTED**.

### I.  Factual and Procedural History

#### A.  Factual History[1]

BAE hired Wells through its apprenticeship program on or about July 14, 1980. In December 1982, BAE promoted Wells to second-class shipfitter, and in August 1984, it promoted her to first-class shipfitter. As a shipfitter, Wells was required to engage in the following physical activities: (1) carrying a cloth bag

---

[1] The facts are presented in the light most favorable to Wells. See Blankenship v. Virginia, 432 F. Supp. 2d 607, 611 (E.D. Va. 2006) (explaining that the court must view the facts in the light most favorable to the non-moving party when reviewing a motion for summary judgment).

weighing between twenty and twenty-five pounds; (2) welding objects to the hull of a ship; (3) using various hand tools; (4) reaching above shoulder height and working with body bent over to complete tasks; and (5) climbing stairs.[2]

Thomas Midgette ("Midgette") was Wells's supervisor until he retired in 1998.  As a supervisor, Midgette was required to assure that shipfitters were doing their jobs, and he was also required to perform various administrative functions, such as preparing reports about job conditions, keeping track of supplies of materials, and completing time cards.  In approximately 1983, Midgette asked Wells to work in the plate shop office and assume some of his administrative responsibilities.   Wells performed various administrative functions for Midgette for approximately fifteen years.  At times, Wells would "do the time" for the entire plate shop, which included approximately 200 employees.   Other supervisors were aware that Wells was assisting Midgette with his administrative duties, and Wells continued to perform administrative work for Midgette until he retired in 1998.

In September 2002, Wells was working for BAE on a job site at Marine Hydraulics International, Inc. ("MHI").  At that time, she was installing foundations aboard a ship and performing all of the

---

[2]The court will refer to these activities as the "physical duties" of a shipfitter.

physical duties of a shipfitter.[3]  On September 13, 2002, Wells was struck by a vehicle in MHI's parking lot and suffered injuries to her entire body.  Following the accident, Wells was no longer capable of performing the physical duties of a shipfitter.  Between September 13, 2002, and November 2002, Dr. Richard Wright ("Dr. Wright"), a physician chosen by Wells, repeatedly determined that she was unable to return to work.  On September 18, 2002, Wells filed a claim for workers' compensation under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 to 950, and she subsequently began receiving workers' compensation payments based on her temporary total disability.  On December 2, 2002, Dr. Wright determined that Wells could return to work on light-duty status with certain restrictions on December 16, 2002.

On December 16, 2002, John Pecsek ("Pecsek"), BAE's plate shop supervisor, determined that there was no work available for Wells consistent with her restrictions.  On December 27, 2002, Wells returned to work.  However, due to conflicting medical reports, Pecsek and BAE's human resources department could not make a

---

[3]It is not clear whether Wells continued to perform administrative functions after Midgette retired.  However, between January 1, 2002, and May 25, 2004, BAE employed Carol Mallory, a shop clerk, to perform clerical functions, such as opening mail, keeping time, and answering telephones, in the plate shop.  Also, between 1998 and 2004, BAE employed a "lead mechanic" or "leadperson" to perform administrative functions in the plate shop. Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. 1 ¶ 3.

decision as to what to do with her.[4]   She sat in the plate shop office and later stood outside it.   Eventually, she became tired and went home after Pecsek told her she could do so.   Because she had only been at work for four hours, she told Pecsek to mark her down for half of a vacation day.

Wells did not return to work until February 2003.   Wells worked from February 17, 2003, through February 25, 2003, because BAE had work available that was consistent with her medical restrictions.   Wells completed small jobs in the plate shop while sitting or standing at a table.   The work involved cleaning foundations and/or small brackets that were put on the foundations. She did not do any work on the ships and did not perform any of the physical duties of a shipfitter.

In early 2003, Wells began seeing a different physician, Dr. Arthur Wardell ("Dr. Wardell").   From March 3, 2003, through the end of the year, Dr. Wardell repeatedly certified, in injury status reports, that Wells was unable to work.   Wells had surgery on her knee in June 2003.   Wells applied, and was approved, under her credit card's payment protection plan to have payments made on her

---

[4]Wells refers to the conflict in her deposition and complaint. It is not clear whether the conflict existed with respect to the information contained within a single report, the information set forth in two reports by the same doctor, or the information set forth in two reports prepared by different doctors.   Wells's statements and allegations simply indicate that she was not put to work because of conflicting information contained within one or more medical reports.

credit card because of her medical disability.  In the fall of
2003, both she and Dr. Wardell signed statements indicating that
Wells was "totally disabled" in support of Wells's claim for
insurance on credit cards.

On January 19, 2004, Wells was again released to return to
work, but BAE did not have any available work that was consistent
with the restrictions imposed by her physician.  This release was
subsequently revoked, and Wells was designated as unable to work
between February 12, 2004, and May 2004.  On April 23, 2004, Sandra
Kight ("Kight"), BAE's human resources manager, sent Wells a letter
informing her that she had not worked since February 2003 and that
if she was unable to return to work by May 25, 2004, BAE would
remove her from its payroll.  The letter explains that it was BAE's
policy to "remove employees from the rolls if absent from work for
fifteen (15) months."  Def.'s Br. in Supp. of Mot. for Summ. J.,
Ex. 26.  The policy referred to in the letter is incorporated into
the collective bargaining agreement ("the CBA") between BAE and
Wells's former union, the International Brotherhood of Boilermaker,
Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local No. 684
("Local No. 684").  The CBA, which became effective on February 9,
2004, provides that an employee's seniority will be broken if the
employee is "unable to work due to personal illness/injury or
occupational injury or any incapacitation for a period of not more
than fifteen (15) months."  Wells Dep., Ex. 26 at 27.  It further

provides that when the absence is due to illness or injury, an employee will be given thirty days written notice prior to being removed from the payroll.

Wells subsequently asked Dr. Wardell to release her to return to work.  On May 7, 2004, Dr. Wardell signed an injury status report, releasing Wells to work and imposing permanent restrictions.  The permanent restrictions limited Wells to one hour standing and one hour sitting and prohibited her from climbing stairs and lifting more than ten pounds.  Given these restrictions, Wells could not perform the physical duties of a shipfitter. Because BAE did not have any work available that was consistent with her restrictions, it did not ask Wells to return to work.  On May 24, 2004, Wells appeared in the BAE shipyard and punched in without first getting clearance from BAE to resume working.  Upon discovering her presence, Pecsek sent her home.  Wells was terminated by BAE on May 25, 2004, because she had not worked in fifteen months.

Following her termination, Local No. 684 filed a grievance on behalf of Wells in accordance with the CBA's internal dispute resolution procedure.  BAE responded with information pertinent to the grievance, and Local No. 684 decided not to pursue the matter further.  If Local No. 684 had continued to pursue the matter and the matter was not otherwise resolved, the CBA would have ultimately required the parties to resolve the dispute through

binding arbitration.

Wells received workers' compensation payments based on her temporary total disability until June 12, 2004.  In September 2004, Wells submitted a signed application to the Social Security Administration for disability benefits and represented that she had been disabled since February 25, 2003.  In September 2004, Dr. Wardell issued various certifications on behalf of Wells indicating that Wells would never be able to return to work.  Wells continues to take pain-relief medication as a result of her September 2002 injuries, and sometimes uses a cane to assist her in walking.  She has not worked for any employer since BAE terminated her employment.

**B.  Procedural History**

On July 6, 2004, Wells filed a Charge of Discrimination against BAE with the Virginia Council on Human Rights and the Equal Employment Opportunity Commission ("EEOC").  Wells alleged that BAE had discriminated against her on the basis of disability by denying her reasonable accommodations and terminating her employment.  On June 30, 2005, the EEOC sent her a Dismissal and Notice of Rights, notifying Wells of her right to sue BAE.

On November 17, 2004, Wells filed a Charge Against Labor Organizations or Its Agents with the National Labor Relations Board ("NLRB"), alleging that Local No. 684 had acted in an arbitrary and capricious manner when it declined to pursue the grievance on her

behalf following the termination of her employment.  On
November 18, 2004, Wells filed a Charge Against Employer with the
NLRB, alleging that BAE had discriminated against Wells by failing
to reinstate her.  The NLRB dismissed the charge against BAE as
untimely and without merit on January 18, 2005.[5]

On September 28, 2005, Wells, proceeding pro se, filed this
civil action against BAE and "John Does."[6]  In her complaint, Wells
alleges that BAE discriminated against her on the basis of
disability in violation of the Americans with Disabilities Act
("ADA"), 42 U.S.C. §§ 12101 to 12213, and the Virginia Human Rights
Act ("VHRA"), VA. CODE ANN. §§ 2.2-3900 to 2.2-3902.  Specifically,
Wells alleges that BAE discriminated against her by refusing to
provide her with reasonable accommodations and terminating her
employment.

On May 24, 2006, BAE moved this court to dismiss Wells's
complaint or, in the alternative, stay the action, arguing that the
claims set forth in Wells's complaint were subject to mandatory,
binding arbitration under the CBA.  On June 13, 2006, the court
received Wells's response, in which she argued that Local No. 684
acted in bad faith and breached its duty of fair representation

---

[5]Presumably, the charge against Local No. 684 was also
dismissed.

[6]On June 5, 2006, this court dismissed the claims against the
John Doe defendants pursuant to the requirements of Rule 4(m) of
the Federal Rules of Civil Procedure.

when it declined to pursue Wells's grievance.  On August 1, 2006, this court issued an Order granting Wells twenty days to amend her complaint to add allegations and state cognizable claims.  The court noted, among other things, that although Wells argued in her response that her union had failed to properly represent her, she had made no such allegation in her complaint.  On August 21, 2006, the court received Wells's "amended memorandum."  The amended memorandum alleged, among other things, that Local No. 684 had failed to properly represent her.  On September 13, 2006, the court issued an Order, directing the Clerk to file Wells's amended memorandum and declaring that it would be treated as part of Wells's complaint.  BAE did not renew its motion to dismiss, and it filed an answer on September 27, 2006.

On February 13, 2007, BAE filed a motion for summary judgment, coupled with a brief in support of the motion.  The brief contains a numbered list of undisputed facts.  See E.D. Va. Local Civ. R. 56(B).  Numerous exhibits are attached to the brief, including the affidavit of Kight, the affidavit of Pecsek, excerpts from a deposition of Wells, and numerous injury status reports prepared by physicians who treated Wells.

BAE's summary judgment motion contains the warning that is required when a party files a dispositive motion against a party proceeding without the benefit of counsel.  See E.D. Va. Local Civ. R. 7(K); see also Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir.

9

1975).  This warning explains that the pro se party is entitled to file a response to the dispositive motion and that any such response must be filed within twenty days of the date on which the motion was filed.  Wells, however, neither filed a response nor requested an extension of time within twenty days of the date BAE filed its motion.  On March 9, 2007, Wells filed a motion for continuance of BAE's summary judgment motion ("motion for continuance"), asking this court to continue BAE's motion for summary judgment to a date not earlier than sixty days after April 14, 2007.  On March 13, 2007, the court issued an Order denying Wells's motion for continuance but granting her an additional seven days to respond to BAE's motion for summary judgment.[7]

On March 21, 2007, the court received Wells's opposition to BAE's motion for summary judgment.  Her opposition contains a

---

[7]In her motion for continuance, Wells alleged in conclusory fashion that she had not had sufficient time for discovery and that BAE did not adequately respond or produce documents to her interrogatories.  She provided no details about what answers or documents BAE failed to produce or about how the requested answers and documents would have assisted her in responding to BAE's motion for summary judgment.  She did not explain her delay in requesting the continuance.  On March 14, 2007, the court received BAE's opposition to Wells's motion for continuance.  In its opposition, BAE noted, inter alia, the following: (1) BAE answered Wells's discovery requests despite the fact that Wells's requests were late; (2) BAE produced over 1500 documents in its possession over the course of discovery; (3) Wells has all relevant documents in her possession that BAE has; and (4) although Wells is proceeding pro se, she admitted during her deposition that she received the advice of legal counsel while litigating this action.

numbered list of facts that she contends are in dispute.  Attached to her opposition are the affidavit of Midgette, her former supervisor, and excerpts of the CBA.  In her opposition, Wells makes the following two allegations that were not set forth in her Charge of Discrimination: (1) BAE failed to engage in an interactive process with her to identify reasonable accommodations; and (2) Wells was subjected to a hostile work environment while working at BAE.  On March 23, 2007, the court received BAE's reply to Wells's opposition.  The matter is now ripe for disposition.

## II.  Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.  Analysis

Wells contends that BAE discriminated against her on the basis

of her disability in violation of the ADA and the VHRA. Specifically, she argues that BAE discriminated against her in the following ways: (1) by wrongfully terminating her employment; (2) by denying her reasonable accommodations; (3) by failing to engage in an interactive process with her to identify reasonable accommodations; and (4) by subjecting her to a hostile work environment. The court will first consider whether BAE is entitled to judgment as a matter of law on Wells's ADA claims, and will then turn to her VHRA claims.

## A.  ADA Claims

The ADA prohibits a covered employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). The relevant date for determining whether a plaintiff is a "qualified individual with a disability" and thus entitled to the ADA's protections is the date of the adverse employment decision complained of. EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000).

Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or

12

employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations may include job restructuring, part-time work schedules, and reassignment to a vacant position. Id. § 12111(9)(B). However, an employer need not "penalize employees free from disability in order to vindicate the rights of disabled workers." EEOC v. Sara Lee Corp., 237 F.3d 349, 355 (4th Cir. 2001). Thus, an employer need not "bump" an employee from an existing position in order to accommodate a person with a disability. Id. Also, the duty to provide reasonable accommodations does not require an employer to reallocate essential functions of a disabled person's job to other employees. 29 C.F.R. pt. 1630, app. § 1630.2(o) (2006).

An ADA plaintiff may establish that he or she is a "qualified individual with a disability" notwithstanding the fact that he or she applied for disability benefits under a different statutory scheme. Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). This is the case because under other statutes, such as the Social Security Act, the possibility of reasonable accommodation is not taken into account when determining if an individual is disabled. Id. However, when an ADA plaintiff has claimed that he or she is totally disabled in an effort to secure disability benefits under another statute, the plaintiff is required to come

13

forward with "'a sufficient explanation for any apparent contradiction'" between her claim under the ADA and her claim for disability benefits.  <u>Id.</u> (quoting <u>Stowe-Pharr Mills</u>, 216 F.3d at 378).  This explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement [that he or she was disabled], the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"  <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 807 (1999).

## 1.  Wrongful Discharge

To avert summary judgment, a plaintiff alleging a wrongful discharge claim under the ADA generally may attempt to prove his or her case by coming forward with direct or indirect evidence of discrimination, or by proceeding under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Cline v. Wal-Mart Stores, Inc.</u>, 144 F.3d 294, 303 (4th Cir. 1998).  Under the direct scheme of proof, the plaintiff must come forward with direct or indirect evidence indicating that a genuine issue of fact exists with respect to the following elements: (1) the plaintiff was a qualified individual with a disability; and (2) the employer's termination of the plaintiff constituted unlawful discrimination.  <u>See Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.</u>, 31 F.3d 209, 212 (4th Cir. 1994) (citing 42 U.S.C. § 12112(a)).  Under the <u>McDonnell Douglas</u> burden-shifting

framework, this court first considers whether a plaintiff has established a prima facie case of discrimination.  <u>Heiko v. Colombo Sav. Bank, F.S.B.</u>, 434 F.3d 249, 258 (4th Cir. 2006).  To establish a prima facie case of wrongful discharge, the plaintiff must show the following elements: "(1) he is within the ADA's protected class [in other words, he was a qualified individual with a disability when discharged]; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination."  <u>Haulbrook v. Michelin N. Am.</u>, 252 F.3d 696, 702 (4th Cir. 2001).  If the plaintiff establishes a prima facie case, the burden of going forward shifts to the defendant to articulate a nondiscriminatory reason for the actions complained of.  <u>Heiko</u>, 434 F.3d at 258.  If the defendant articulates one or more such reasons, the burden shifts back to the plaintiff to demonstrate that the defendant's reasons were merely a pretext for discrimination.  <u>Id.</u>

Wells has not indicated whether she seeks to proceed under the <u>Tyndall</u> scheme of proof or the burden-shifting framework.  It would be futile, however, for Wells to proceed under the burden-shifting framework.[8]  Where, as here, the plaintiff was discharged for

---

[8]Wells obviously could not establish that she was meeting her employer's legitimate expectations at the time of her discharge in light of the fact that she had been unable to work as a shipfitter

reasons having some relation to his or her disability, it is proper to analyze the plaintiff's wrongful discharge claim under the direct scheme of proof.  <u>Tyndall</u>, 31 F.3d at 211-12 (applying the direct scheme of proof where an employer discharged an employee who was frequently absent from work because of her disability and her need to care for a disabled family member); <u>Vazquez v. Bedsole</u>, 888 F. Supp. 727, 730 (E.D.N.C. 1995) (explaining that "when the employer relies somewhat upon the employee's disability in discharging the employee, the <u>Tyndall</u> . . . analysis is applied").

At a threshold level, the court notes that it is undisputed that Wells was a person with a disability when her employment was terminated.  The parties disagree, however, as to whether Wells can establish that she was a "qualified individual with a disability." In other words, they disagree as to whether Wells could perform the essential functions of a shipfitter, with or without reasonable accommodations, when her employment was terminated.

---

for over fifteen months.  Therefore, she could not establish a prima facie case of discrimination.  In any event, the advantage of proceeding under the burden-shifting framework is that it allows a court to draw an inference of discrimination once the plaintiff establishes a prima facie case.  <u>See</u> <u>Causey v. Balog</u>, 162 F.3d 795, 800 (4th Cir. 1998) (explaining that "[e]stablishing a prima facie case gives rise to an inference of discrimination").  In this case, BAE terminated Wells for reasons related to her disability.  Under such circumstances, there is no need for Wells to establish facts giving rise to an inference of discrimination.  If Wells was a qualified individual with a disability and was nevertheless terminated for reasons related to her disability, a genuine issue of material fact would certainly exist as to whether her termination was unlawful.  <u>See</u> 42 U.S.C. § 12112(a).

The Fourth Circuit has explained that if a job function bears more than a marginal relationship to the job at issue, it is an essential job function.  Rohan v. Networks Presentations LLC, 375 F.3d 266, 279 (4th Cir. 2004).  "[E]ssential functions means the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  In determining which job functions are essential, the court may consider the employer's judgment and the amount of time an employee must spend performing the function.  29 C.F.R. § 1630.2(n)(3)(i), (iii).

It is undisputed that a shipfitter is required to perform physical duties, including carrying a heavy bag of tools, using hand tools, and climbing up and down stairs.  Wells does not dispute that a shipfitter is required to perform such duties, and in the judgment of BAE, these functions are essential to the position.  See Kight Aff. ¶ 4.  Moreover, it is clear that a shipfitter spends most of his or her time performing these physical duties.  See id. (referencing the written job description); Wells Dep. at 73-74 (explaining that Wells was performing these physical duties while working at the job site at MHI prior to her September 2002 accident).  Accordingly, the essential functions of a shipfitter include physical duties, such as carrying a heavy bag of tools, using hand tools, and climbing up and down stairs.

Having determined that the physical duties of a shipfitter are

17

essential functions of that position, the court must next address whether Wells could perform them, with or without reasonable accommodations, at the time her employment was terminated. Given her permanent medical restrictions, it is clear that Wells could not perform the physical duties of a shipfitter without accommodations when BAE fired her. See Wells Dep., Ex. 92 (prohibiting Wells from climbing stairs or lifting more than ten pounds); see also Wells Dep. at 74 (admitting that following her September 2002 accident, she could not perform the physical duties of a shipfitter). Moreover, while applying for workers' compensation and various other disability-related benefits, Wells repeatedly represented in sworn statements that she was totally disabled. She has not attempted to explain how she could qualify as totally disabled for the purpose of obtaining disability-related benefits, while also being able to perform the physical duties of a shipfitter. Thus, she has not explained the contradiction between her sworn statements and her ADA claim. It is readily apparent that the only way for her to explain the contradiction would be for her to show that although she was totally disabled, she could have continued to perform the physical duties of a shipfitter if provided with reasonable accommodations. See, e.g., Fox, 247 F.3d at 177-78.

Wells, of course, has the burden to identify reasonable accommodations that would have allowed her to continue performing

the essential functions of a shipfitter.  See Lamb v. Qualex, Inc., 33 F. App'x 49, 59 (4th Cir. 2002) ("The burden of identifying an accommodation that would allow a qualified individual to perform the job rests with the plaintiff, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."). She has not, however, identified any accommodations, let alone reasonable ones, that would have allowed her to continue to perform the physical duties of a shipfitter. Given her medical restrictions, the court cannot even hypothesize an accommodation that would have allowed her to continue to perform tasks such as using hand tools, bending over, and climbing up and down stairs.

In her opposition to BAE's motion for summary judgment, Wells contends that the essential functions of a shipfitter include certain administrative functions and that she remained able to perform those administrative functions following her accident. However, even if Wells's contentions are true, the fact remains that the essential functions of a shipfitter included, in addition to administrative functions, physical duties that she was unable to perform. As a result, BAE could not have retained Wells as an employee unless it transferred essential functions of her position to another employee. The ADA imposes no such requirement on an employer. 29 C.F.R. pt. 1630, app. § 1630.2(o) (explaining that while reallocation of "nonessential, marginal job functions" is a

potential reasonable accommodation, an employer need not reallocate essential functions); see Martinson v. Kinney Shoe Corp., 104 F.3d 683, 687 (4th Cir. 1997) ("The ADA simply does not require an employer to hire an additional person to perform an essential function of a disabled employee's position."). Accordingly, at the time her employment was terminated, Wells could not perform essential functions of a shipfitter, with or without reasonable accommodations, and BAE is entitled to judgment as a matter of law on Wells's wrongful discharge claim.[9]

## 2.  Failure to Accommodate

Wells also alleges that, following her accident, BAE failed to provide her with reasonable accommodations.  To establish such a claim, a plaintiff must, at a minimum, show that she was denied a reasonable accommodation by her employer.  See Rhoads v. FDIC, 257 F.3d 373, 387 n.11 (4th Cir. 2001); Wiggins v. DaVita Tidewater, LLC, 451 F. Supp. 2d 789, 796 (E.D. Va. 2006).  Wells alludes to the existence of three potential accommodations in support of her claim.  First, she contends that BAE should have allowed her to continue to perform the clerical duties of a shipfitter, without

---

[9]BAE has also argued that Wells's wrongful discharge claim must fail because she was terminated pursuant to a purportedly legitimate and nondiscriminatory policy incorporated into the CBA. The policy provides that an employee will be removed from BAE's payroll if absent from work for fifteen months.  Because Wells cannot establish that she was a qualified individual with a disability when her employment was terminated, it is unnecessary to consider this argument, and the court declines to do so.

requiring her to perform the physical duties associated with that position.  This argument is unavailing because, as noted above, the ADA does not require an employer to shift essential functions of a disabled person's position to another employee.  See 29 C.F.R. pt. 1630, app. § 1630.2(o).  BAE could not have retained Wells without shifting the physical duties of her position to another employee. Accordingly, BAE was not legally obligated to provide this accommodation.

Second, Wells contends that BAE should have created a light-duty position for her.  She claims that BAE created jobs for other employees who were limited by medical restrictions to performing light-duty work.[10]  It is well-settled, however, that the ADA does not require an employer to create a new position to accommodate a disabled employee.  Lamb v. Qualex, Inc., 33 F. App'x. 49, 59 (4th Cir. 2002) (citing Barnett v. U.S. Air, Inc., 157 F.3d 744, 751 (9th Cir. 1998); Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1187 (6th Cir. 1996); White v. York Int'l Corp., 45 F.3d 357, 362 (10th Cir. 1995)).  Moreover, even if BAE had previously exceeded the requirements of the ADA by creating jobs for other disabled employees, its failure to provide such an accommodation to Wells would not violate the ADA.  See Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995) (explaining that although an employer "is free to

---

[10]Wells has not provided any details about these positions and who held them, nor has she come forward with sworn statements or other evidence to substantiate her assertions.

exceed the requirements of the ADA in fashioning its policies regarding disabled employees, such policies are not the definitive source of the standard by which reasonable accommodation is measured under federal law").

Third, she contends that BAE could have reassigned her to a clerical position.  The ADA explicitly provides that reassignment to a <u>vacant</u> position is a reasonable accommodation.  42 U.S.C. § 12111(9)(B).  It is clear that until 1998, Wells performed some of Midgette's administrative functions, which included work of a clerical nature.  Between January 2002 and June 2004, however, it is undisputed that BAE employed a shop clerk to perform clerical functions in the plate shop and that this position was occupied by Carol Mallory.  Moreover, BAE has asserted through the affidavits of Kight and Pecsek that during those periods of time between September 2002 and May 25, 2004, that Wells was cleared by her physician to perform light-duty work, there were no vacant positions within BAE, of a clerical nature or otherwise, for which she was qualified.  <u>See</u> Def.'s Br. in Supp. of Mot. for Summ. J., Pecsek Aff. ¶ 8.  Wells has not come forward with affidavits, sworn statements, or other evidence indicating that this was not the case.[11]  The ADA, of course, does not require an employer to bump

---

[11]Wells argues in conclusory fashion that between December 27, 2002, and February 14, 2003, BAE refused to put her back to work. <u>See</u> Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4.  She does not, however, specifically allege that light-duty work was available during that period of time.  In any event, even if she had made

an employee out of an existing position to accommodate a disabled employee.  <u>Sara Lee Corp.</u>, 237 F.3d at 355.   Therefore, BAE's failure to reassign Wells to a new position does not constitute a failure to provide reasonable accommodations, and Wells's failure to accommodate claim must fail as a matter of law.

### 3.  Failure to Engage in an Interactive Process

Wells also alleges that BAE failed to engage in an interactive process with her to identify potential reasonable accommodations. An employee cannot base a claim "solely on the allegation that the employer failed to engage in an interactive process."  <u>Walter v. United Airlines, Inc.</u>, No. 99-2622, 2000 WL 1587489, at *5 (4th Cir. Oct. 25, 2000) (citing <u>Rehling v. City of Chicago</u>, 207 F.3d 1009, 1016 (7th Cir. 2000)).   Instead, such an allegation is properly considered part of a failure to accommodate claim, and "the employee must demonstrate that the employer's failure to

---

such an allegation in a proper affidavit, her conclusory assertion, without more, would be insufficient to avert summary judgment. <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996) (explaining that summary judgment affidavits cannot be conclusory and must "contain admissible evidence and be based on personal knowledge").   The court notes that although Wells is proceeding pro se, she received at least some limited assistance from legal counsel while litigating this action and provided a proper affidavit from Midgette.   <u>See</u> <u>supra</u> note 7.   In any event, because Wells did not file her Charge of Discrimination until July 6, 2004, Wells cannot rely on events occurring between December 2002 and February 2003 to establish her reasonable accommodations claim.   <u>See</u> <u>J.S. ex rel. Duck v. Isle of Wight County Sch. Bd.</u>, 402 F.3d 468, 475 n.12 (4th Cir. 2005) ("Claimants under the ADA must file a charge of discrimination with the [EEOC] within 180 days of the alleged discriminatory practice.").

engage in the interactive process resulted in the failure to identify an appropriate accommodation for the qualified employee." Id. (citing Rehling, 207 F.3d at 1016); see Fleetwood v. Harford Sys. Inc., 380 F. Supp. 2d 688, 701 (D. Md. 2005) ("[A]n employee cannot prevail simply by demonstrating that his employer failed to engage in the interactive process; he also must show that this failure to engage in the process resulted in the failure to find an appropriate accommodation."). Thus, a plaintiff must show that a reasonable accommodation existed, before a court may find that an employer's purported failure to engage in an interactive process was unlawful. Jackson v. City of Chicago, 414 F.3d 806, 813 (7th Cir. 2005).

Wells has not come forward with any evidence indicating that BAE's purported failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for her. On the contrary, it is clear that between September 2002 and May 25, 2004, Wells was either entirely unable to work or unable to perform anything other than light-duty work. BAE was aware of her limitations, and when light-duty work was available, as it was in February 2003, Wells was assigned to it. In other words, a reasonable accommodation for Wells generally did not exist between September 2002 and May 25, 2004, and when the opportunity to accommodate Wells presented itself, BAE accommodated her. Accordingly, Wells's claim must fail as a matter of law because

24

Wells has not shown that BAE's purported failure engage in an interactive process resulted in a failure to identify a reasonable accommodation for her.

**4.  Hostile Work Environment Claim**

Wells's hostile work environment claim fails as a matter of law for two reasons.  First, she did not allege that she was subject to a hostile work environment in her Charge of Discrimination filed with the EEOC.  Thus, Wells failed to satisfy the administrative prerequisites for bringing a hostile work environment claim under the ADA.  See Greer v. Emerson Elec. Co., 185 F.3d 917, 922 n.10 (8th Cir. 1999) (declining to consider a hostile work environment claim that was not alleged in the plaintiff's Charge of Discrimination); see also Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005) (noting in a case arising under Title VII of the Civil Rights Act of 1964 that "[a] claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits").

Second, Wells cannot establish that she was subjected to a hostile work environment on the facts of this case.  "To state a hostile work environment claim under the ADA, a plaintiff must establish: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment

was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." Wiggins, 451 F. Supp. 2d at 799-800.   To prevail on a hostile work environment claim, the plaintiff must show, among other things, that a reasonable person would perceive her work environment as objectively hostile. Id. at 800.

Wells has not described anything even remotely resembling a hostile work environment.  Between September 12, 2002, and May 25, 2004, Wells worked less than ten days.  She has not described anything that occurred during that time, other than the general nature of her duties and the fact that she was not permitted to work on December 27, 2002, due to conflicting medical reports. There is certainly nothing objectively hostile about an employer's failure to put an employee back to work due to its uncertainty about the employee's physical limitations.  Accordingly, Wells has failed, as a matter of law, to establish a hostile work environment claim.

**B.   VHRA Claims**

The VHRA declares that it is the policy of the Commonwealth of Virginia to safeguard all individuals from, among other things, unlawful discrimination because of disability.   VA. CODE ANN. § 2.2-3900(B)(1).  However, it does not create an independent or

private cause of action, except under the limited conditions set forth in section 2.2-2639(B) and (C) of the Code of Virginia. Blankenship v. City of Portsmouth, 372 F. Supp. 2d 496, 501 (E.D. Va. 2005); see VA. CODE ANN. § 2.2-2639(A); Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 105, 439 S.E.2d 328, 331 (1994) (explaining that the VHRA "does not create any new causes of action"); see also Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 57 n.1 (4th Cir. 1995) (noting that the VHRA only applies where a violation of existing laws is found).  Section 2.2-2639(B) of the Code of Virginia prohibits an employer with more than five but less than fifteen employees from discharging an employee on the basis of "race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, including lactation, or of age if the employee is 40 years old or older." Section 2.2-2639(C), in turn, describes the administrative prerequisites for bringing an action under the VHRA.

    Wells's VHRA claims fail as a matter of law.  The VHRA does not create an independent cause of action to redress discrimination on the basis of disability.  See VA. CODE ANN. § 2.2-2639(B).  In any event, the VHRA does not create an independent cause of action against an employer, such as BAE, that has fifteen or more employees.   See id.; Pl.'s Compl., Charge of Discrimination (indicating that BAE employs over 500 employees).  Furthermore, because Wells's ADA claims fail as a matter of law, she cannot

27

establish that she was subject to unlawful discrimination on the basis of disability. <u>See</u> <u>Ennis</u>, 53 F.3d at 57 n.1 (holding that a plaintiff's VHRA claim necessarily failed because she failed to establish a violation of the ADA); <u>see also</u> VA. CODE ANN. § 2.2-3901 ("Conduct that violates any Virginia or federal statute or regulation governing discrimination on the basis of . . . disability shall be an 'unlawful discriminatory practice' for the purposes of this chapter.").

## IV.  Conclusion

For the reasons set forth above, BAE's motion for summary judgment is **GRANTED**.  Wells is **ADVISED** that she may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  The written notice must be received by the Clerk within thirty (30) days from the date of this Opinion and Final Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Wells and to counsel for BAE.

**IT IS SO ORDERED**.



/s/
Rebecca Beach Smith

Norfolk, Virginia

April 2, 2007